IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CHRISTY SHOAF,

    PLAINTIFF,

VS.                                          CV NO.:

JCG FOODS OF ALABAMA LLC,

    DEFENDANT.                  JURY TRIAL DEMANDED

COMPLAINT

## I. JURISDICTION

    1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, et. seq. ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

    2.    Defendant, JCG Foods of Alabama LLC, (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(1)-(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks for the calendar years of 2019, 2020 and 2021. During the calendar years of 2019, 2020 and 2021, Defendant employed these fifty (50) or more employees within 75 miles of Plaintiff's worksite.

## II. PARTIES

3. Plaintiff, Christy Shoaf, (hereinafter "Plaintiff") is a resident of Collinsville, Dekalb County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Middle Division.

4. Defendant JCG Foods of Alabama LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617 and 29 U.S.C. § 201, *et seq.* Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6. Defendant hired Plaintiff on or about July 31, 2018.

7. Defendant employed Plaintiff as a Poultry and Egg Production worker.

8. Defendant terminated Plaintiff's employment on May 20, 2020.

9. As of the date of Plaintiff's termination, Plaintiff held the position of Poultry and Egg Production worker.

10. On October 23, 2019, Plaintiff provided Defendant notice of unforeseeable FMLA leave.

11. Defendant utilizes a vendor known as FMLA Source.

12. FMLA Source provides services to Defendant to administer its statutory and regulatory obligations required by the FMLA.

13. On October 25, 2019, FMLA Source provided Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

14. On October 25, 2019, FMLA Source approved Plaintiff's use of continuous FMLA leave that began on October 23, 2019 and ended on October 24, 2019.

15. Defendant employs Christopher Guice.

16. Guice is employed as Defendant's HR Manager of its Collinsville, Alabama location.

17. FMLA Source sent Guice a courtesy copy of its October 25, 2019 letter approving Plaintiff's FMLA leave.

18. During the 12-month period prior to October 23, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

19. Defendant employed fifty (50) or more persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 23, 2019 request for continuous FMLA leave.

20. During the week of October 23, 2019, Defendant employed fifty or more employees, who worked within 75 miles of the location where Plaintiff worked.

21. On October 30, 2019, FMLA Source provided Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

22. On October 30, 2019, FMLA Source approved Plaintiff's use of intermittent FMLA leave that began on October 24, 2019 and ended on November 8, 2019.

23. FMLA Source sent Guice a courtesy copy of its October 30, 2019 letter approving Plaintiff's FMLA leave.

24. During the 12-month period prior to October 24, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

25. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 2019 request for intermittent FMLA leave beginning on October 24, 2019 and ending on November 8, 2019.

26. During the week of October 24, 2019, Defendant employed fifty or more employees, who worked within 75 miles of the location where Plaintiff worked.

27. On February 21, 2020, FMLA Source provided Plaintiff with a Notice of Eligibility and Rights and Responsibilities form and a "FMLA or Leave of Absence Certification."

28. The "FMLA or Leave of Absence Certification" indicated a return date of March 10, 2020.

29. FMLA Source sent Guice a courtesy copy of its February 21, 2020, letter approving Plaintiff's FMLA leave.

30. During the 12-month period prior to February 18, 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

31. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's February 2020 request for intermittent FMLA leave beginning on February 18, 2020 and ending on March 18, 2020.

32. During the week of February 18, 2020, Defendant employed fifty or more employees, who worked within 75 miles of the location where Plaintiff worked.

33. On March 4, 2020, FMLA Source approved Plaintiff's use of intermittent FMLA leave that began on February 18, 2020 and ended on March 18, 2020.

34. FMLA Source sent Guice a courtesy copy of its March 4, 2020 letter approving Plaintiff's FMLA leave.

35. On March 13, 2020, the United States Federal Government and the government of the State of Alabama entered various executive orders regarding public health to respond to the global pandemic caused by SARS-Cov-2 virus that causes COVID-19.

36. Plaintiff did not seek to utilize her FMLA leave to be absent from work due to the COVID-19 pandemic.

37. On or about March 20, 2020, Guice instructed Plaintiff not to return to work "until you are healthy."

38. Plaintiff objected and informed Guice that her physician had not instructed her to refrain from working.

39. Plaintiff stated that she had only been informed of the need for intermittent follow-up treatments.

40. Guice responded that regardless she could not return until she had been "medically cleared to return to work".

41. On March 24, 2020, Plaintiff's physician sent FMLA Source a completed "FMLA or Leave of Absence Certification" regarding Plaintiff's request for continuous leave from March 18, 2020 through March 23, 2020 and Plaintiff's

request for intermittent FMLA leave from March 19, 2020 through February 17, 2021.

42. Plaintiff's physician indicated that Plaintiff suffered from "a condition that would likely result in a period of incapacity of more than three (3) full, consecutive calendar days in the absence of such treatment", and, a "chronic health condition which continues over an extended period of time and BOTH (1) requires periodic visits for treatment by a health care provider (as least (2) visits per year) and may cause episodic incapacity or flare-ups would cause periods of reoccurrence without treatment …".

43. On March 27, 2020, FMLA Source provided Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

44. On March 27, 2020, FMLA Source approved Plaintiff's use of intermittent FMLA leave beginning on March 19, 2020 and ending on February 17, 2021.

45. FMLA Source sent Guice a courtesy copy of its March 27, 2020, letter approving Plaintiff's intermittent FMLA leave.

46. During the 12-month period prior to March 19, 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

47. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding

calendar year of Plaintiff's March 2020 requests for continuous leave beginning on March 18, 2020 and ending on March 23, 2020 and intermittent FMLA leave beginning on March 19, 2020 and ending on February 17, 2021.

48. During the week of March 19, 2020, Defendant employed fifty or more employees, who worked within 75 miles of the location where Plaintiff worked.

49. On April 3, 2020, FMLA Source sent a letter to Plaintiff denying her request for continuous leave from March 18, 2020 through March 23, 2020.

50. Plaintiff's physician had completed the "Dates of Leave" section of Plaintiff's March 24th Certification for the Intermittent Leave but failed to complete the "Dates of Leave" section for the Continuous Leave.

51. FMLA Source sent Guice a courtesy copy of its April 3, 2020, letter denying Plaintiff's continuous FMLA leave.

52. Neither FMLA Source nor Defendant notified Plaintiff that her March 24th Certification was deficient prior to denying her request.

53. Upon information and belief, neither FMLA Source nor Defendant contacted Plaintiff's physician for clarification of Plaintiff's March 24th Certification.

54. On May 20, 2020, Defendant terminated Plaintiff's employment due to a failure to "put in request to extend LOA.  Employee wasn't dependable.  Attendance Policy Violation."

55. During April and May 2020, Plaintiff made repeated telephone calls to Defendant in an attempt to return to work.

56. Each time that Plaintiff called Defendant's Human Resources' Department to speak with Guice about her return to work, Defendant's Human Resources' Department informed her that Guice was unavailable.

57. Guice did not return Plaintiff's calls about returning to work.

58. Defendant employs Dave Chapman.

59. Defendant employs Chapman as its Plant Manager.

60. Plaintiff also attempted to contact Defendant's Plant Manager about her return to work.

61. Chapman did not return Plaintiff's calls about returning to work.

62. Plaintiff only learned of her termination when she received her COBRA paperwork from Defendant's health insurance provider.

63. Upon receipt of the COBRA paperwork, Plaintiff traveled to Defendant's plant and sought to speak with Defendant's managers about the termination decision, but she was denied entry.

64. Plaintiff could perform the essential functions of the job that she held on March 18, 2020.

65. Plaintiff could perform the essential functions of the job that she held on March 20, 2020.

66. Guice did not instruct other employees to remain at home and refrain from working from March 20, 2020 through May 20, 2020.

## IV. COUNT ONE - FMLA INTERFERENCE

67. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 66 above as if fully set forth herein.

68. On March 24, 2020, Plaintiff's physician sent FMLA Source a completed "FMLA or Leave of Absence Certification" regarding Plaintiff's request for continuous leave from March 18, 2020 through March 23, 2020 and Plaintiff's request for intermittent FMLA leave on March 19, 2020 through February 17, 2021.

69. On March 27, 2020, FMLA Source approved Plaintiff's use of intermittent FMLA leave beginning on March 19, 2020 and ending on February 17, 2021.

70. FMLA Source sent Guice a courtesy copy of its March 27, 2020, letter approving Plaintiff's intermittent FMLA leave.

71. On or about March 20, 2020, Guice instructed Plaintiff that she could not return until she had been "medically cleared to return to work."

72. During April and May 2020, Plaintiff made repeated telephone calls to Defendant in an attempt to return to work.

73. Each time that Plaintiff called Defendant's Human Resources' Department to speak with Guice about her return to work, Defendant's Human Resources' Department informed her that Guice was unavailable.

74. Guice never returned Plaintiff's calls about returning to work.

75. Plaintiff also attempted to contact Chapman about her return to work.

76. Chapman never returned Plaintiff's calls about returning to work.

77. Plaintiff only learned of her termination when she received her COBRA paperwork from Defendant's health insurance provider.

78. Upon receipt of the COBRA paperwork, Plaintiff traveled to Defendant's plant and sought to speak with Defendant's managers about the termination decision, but she was denied entry.

79. On May 20, 2020, Defendant terminated Plaintiff's employment due to a failure to "put in request to extend LOA. Employee wasn't dependable. Attendance Policy Violation."

80. Defendant interfered with Plaintiff's FMLA rights by forcing her to take continuous FMLA leave when she only sought and was approved for intermittent FMLA leave.

81. As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benfits from March 24, 2020 through October 30, 2020.

## V. COUNT TWO - FMLA RETALIATION

82. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 80 above as if fully set forth herein.

83. On March 4, 2020, FMLA Source approved Plaintiff's use of intermittent FMLA leave that began on February 18, 2020 and ended on March 18, 2020.

84. FMLA Source sent Guice a courtesy copy of its March 4, 2020 letter approving Plaintiff's FMLA leave.

85. On or about March 18, 2020, Plaintiff requested continuous FMLA leave from March 18, 2020 through March 23, 2020 and for intermittent FMLA leave beginning on March 19, 2020 and ending on February 17, 2021.

86. On or about March 20, 2020, Guice instructed Plaintiff that she could not return until she had been "medically cleared to return to work."

87. During April and May 2020, Plaintiff made repeated telephone calls to Defendant in an attempt to return to work.

88. Each time that Plaintiff called Defendant's Human Resources' Department to speak with Guice about her return to work, Defendant's Human Resources' Department informed her that Guice was unavailable.

89. Guice never returned Plaintiff's calls about returning to work.

90. Plaintiff also attempted to contact Chapman about her return to work.

91. Chapman never returned Plaintiff's calls about returning to work.

92. Plaintiff only learned of her termination when she received her COBRA paperwork from Defendant's health insurance provider.

93. Upon receipt of the COBRA paperwork, Plaintiff traveled to Defendant's plant and sought to speak with Defendant's managers about the termination decision, but she was denied entry.

94. Guice did not instruct other employees to remain at home and refrain from working from March 20, 2020 through May 20, 2020.

95. On May 20, 2020, Defendant terminated Plaintiff's employment due to a failure to "put in request to extend LOA. Employee wasn't dependable. Attendance Policy Violation" and stated that Plaintiff's last day worked was March 24, 2020.

96. But for Plaintiff's FMLA leave, Defendant would not have terminated Plaintiff's employment.

97. As a result of Defendant's discriminatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits from March 24, 2020 through October 30, 2020.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

B. Award her back pay, together with employment benefits, liquidated damages; special damages (if any); nominal damages;

C. Attorneys' fees and costs;

D. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 2617(a)(1)(B) that the actions of Defendant violated the law; and,

E. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

_____
Whitney Morgan Brown

**OF COUNSEL:**

ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com
whitney@allenarnoldlaw.com

PLAINTIFF REQUESTS TRIAL BY STRUCK JURY

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
JCG Foods of Alabama LLC
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104